## American Steel & Wire Company v. Joseph Mosele.
### Gen. No. 4,689.

1. VERDICT—*when set aside.* A verdict which is clearly against the preponderance of the evidence will be set aside by the Appellate Court.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Reversed and remanded. Opinion filed October 16, 1906.

C. W. BROWN, KNAPP, HAYNIE & CAMPBELL, for appellant.

DONAHOE, McNAUGHTON & McKEOWN, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

At appellant's mills at Joliet it had a building known as a lime house. It was perhaps twenty feet long, about twelve feet wide and about seven feet high. The stone foundation of a chimney formed its north wall. The other walls were of brick and twelve inches thick. At about the center of the south side were double doors, opening out. Inside these doors, in the casing, channels were made, and boards were placed in these grooves or channels from time to time, as the slaked lime rose in the interior of the room, to retain the liquid lime till it became thick. The roof of the lime house was nearly flat. There were two boxes on the roof. On the east and the west of the building were railroad tracks. A box car loaded with lime would be set in on one of these tracks, and the lime would be shoveled on to the roof of the lime house, where laborers would shovel it into the boxes, let water into the boxes from a water pipe which conducted water to that place for that purpose, slake the lime, and then let it out and let it pass through a hole

in the roof protected by a sieve or wire netting, and let it run down into the inside of the lime house. This slaked lime was at first hot and thin, but in twelve hours it would become thick like putty, so that it could be cut and taken out with a shovel. Appellee was a laborer in the employ of appellant at that mill, and for two days had been working slaking lime on that roof. In the afternoon of August 24, 1903, part of the east wall and the southeast corner of the wall fell out, while plaintiff was so at work. The lime flowed to the east and north and south. Appellee fell into the lime and was burned. He brought this suit to recover damages for the injuries so received. At the trial he had a verdict for $2,000. Appellant made a motion for a new trial, and filed points in support thereof, two of which were that the verdict was against the evidence, and that it was excessive. The motion was denied, appellant excepted, appellee had judgment on the verdict, and appellant prosecutes this appeal therefrom.

Appellee claims that the walls were defective and not fit to retain so great a quantity of lime as was then in the house, which had risen at that time to five and a half feet or six feet, and that the manifestations of the defective condition of the walls were so plain that appellant was chargeable with notice thereof. Considerable stress is laid by appellee upon the fact that the brick walls were only built up against the foundation of the chimney which formed the north wall of the lime house, and were not dovetailed into it; but the proof shows that two feet or more of the north end of the east wall, next to the chimney, did not fall; hence the falling of the wall was not in any respect due to the fact that the east wall was not tied to the chimney. It was shown by nearly every witness except the medical men, that lime frequently oozed out of the house around the boards we have described, and between the door casings and the back wall, and means had been used from time to time to stop up such crev-

ices and leakage. But that portion of the south wall which fell was only at the southeast corner, and the fallen wall did not reach to the door. Hence the leakage of lime about the door had no connection with the falling of the wall. Appellee testified to great leaks and crevices in the east and south and west walls, out of which streams of lime spurted, and that rags had been pushed into these places to stop the leakage, and that sticks used to push in such rags had been left projecting from the walls; and in an answer framed by the witness, and which cannot be explained by saying that the cross-examiner misled a witness imperfectly acquainted with the English language, he placed the possible number of sticks projecting from the walls of the lime house at forty. He testified that some of these apertures were as wide as a brick, and that some of them were two inches square. He was partially sustained by one witness as to the condition of things the afternoon of the injury. This story on the face of it is very improbable, for it would seem that substantially all the contents of the lime house would run out through such apertures while the lime was hot and thin. Seven witnesses, one of them called by appellee, showed that no such condition existed. Some of the witnesses by whom this was shown were about there daily and many times a day, and they declared there were no leaks except about the door, and no sticks projecting from the walls. Others had occasion to inspect or see the inside of the lime house when it was wholly or partially empty, and showed that the bricks were not visible on the inside, because there was on the inside a hard coating of lime two inches thick, and hence that there were and could be no such cracks and openings. Where two witnesses testify to an improbable state of facts, and they are contradicted by seven witnesses who testify to a much more reasonable and probable condition of things, and no other reason appears for believing the two, a verdict based upon the

American Steel & Wire Co. v. Mosele.

testimony of the two cannot be sustained. The verdict, therefore, cannot be sustained on the ground that the proof just recited warranted the jury in finding that the defective condition of the wall was obvious and was or should have been known to appellant.

But appellee relies upon the principle expressed in the phrase *res ipsa loquitur*—"the affair speaks for itself"—or in other words, that the circumstances show that the wall was negligently constructed, or that it was negligently maintained in an unsafe condition. As the judgment must be reversed and the cause remanded for a new trial for the reason hereinafter stated, and upon another trial the condition of the building and the quantity of lime which had been habitually placed therein and which it was reasonably capable of containing while thin, will probably be the subject of further inquiry and testimony, we do not consider it necessary or advisable to discuss that subject now.

Appellee was confined to the hospital about four weeks. He claims that he has been able to work but very little since then. The preponderance of the medical testimony is that he was but slightly burned, and was able to go to work at the end of four weeks. The vision of appellee's right eye is seriously impaired. The medical testimony is that his right eye was not burned at all. The proof does not warrant the conclusion that the condition of his right eye is due to the falling of this wall. If it is not, then the damages are excessive.

For this reason we are of opinion that the trial court erred in not granting a new trial. The judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*